UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
No. 1:20-cv-11501-RGS

JENNIFER ROOT BANNON, as Special
Personal Representative  of the Estate of
Juston Root,
                      Plaintiff
v.

BOSTON POLICE OFFICERS DAVID
GODIN, JOSEPH McMENAMY, LEROY
FERNANDES, COREY THOMAS and
BRENDA FIGUEORA;

MASSACHUSETTS STATE TROOPER
PAUL CONNEELY; and

THE CITY OF BOSTON,
MASSACHUSETTS
                      Defendants

**DEFENDANT, CITY OF BOSTON'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS COUNT 7 OF PLAINTIFF'S COMPLAINT**

The Defendant, City of Boston ("City" or "Defendant"), hereby moves this Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss all claims brought against it by Plaintiff, Jennifer Root Bannon, Personal Representative of the Estate of Juston Root ("Plaintiff"), on the grounds that the Plaintiff has failed to state a claim upon which relief can be granted.  More specifically, the City seeks dismissal of Count 7 (Negligent Training and Supervision) of Plaintiff's Complaint.  Count 7 as against the City must be dismissed because they merely set forth conclusory allegations without any factual support**.**

## II.   __FACTUAL BACKGROUND__[1]

On February 7, 2020 officers responded to the area of Brigham and Women's Hospital for a person, later identified as Juston Root, with a gun.  (Complaint ¶18 and ¶19).   Officers David Godin and Michael St. Peter arrived on scene. (Compl. ¶21).   Officer Godin encountered the suspect, Juston Root in the area of Fenwood Road. (Compl. ¶22).     Mr. Root drew his weapon at Officer Godin. (Compl. ¶23).   Officer Godin fired at Mr. Root. (Compl. ¶23).   Officer St. Peter was standing nearby and also fired at Mr. Root.  (Compl. ¶26).   Mr. Root fell to the ground, got back up, and got into vehicle. (Compl.¶27).   Mr. Root then fled the scene toward Rt. 9 (Compl. ¶27 & ¶28).   A subsequent motor vehicle pursuit ensued down Route 9 toward Brookline, with other Boston Police and Massachusetts State Police cruisers joining.  (Compl. ¶32 and ¶39).

Eventually, officers were able to locate Mr. Root's vehicle heavily damaged vehicle. (Compl. ¶42).   Several other vehicles in the area which had been struck by Mr. Root's vehicle were also damaged. (Compl. ¶42)  Mr. Root fled his vehicle on foot toward a busy shopping area in Chestnut Hill. (Compl. ¶44).   Mr. Root staggered onto the sidewalk/mulch. (Compl. ¶46).   Within moments, officers pulled up on scene and located Mr. Root. (Compl. ¶50).   Mr. Root was trying to get up.  (Compl. ¶52). Mr. Root was also trying to reach for something in his pockets. (Compl. ¶52 and ¶55).   Mr. Root repeatedly failed to comply with officers' commands to get on the ground and show his hands.  (Compl. ¶52 and ¶55).   After Mr. Root failed to comply with the repeated commands, officers shot him.  (Compl. ¶57).   A BB gun was found under Mr. Root's body. (Compl. ¶63).   Mr. Root succumbed to his injuries.  (Compl. ¶74).

---

[1] The following facts from the Complaint are assumed to be true for the limited purpose of this motion only.

## III.    ARGUMENT

### A.    Standard of Review

A complaint or count therein must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) where it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the Court is obliged to accept the plaintiff's well-pleaded facts as they appear, granting every reasonable inference in the plaintiff's favor.  *Cooperman v. Individual, Inc.*, 171 F.3d 43, 46 (1st Cir. 1999).  However, this tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  Mere recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id.*, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations,  plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 545 (citations omitted).

 "Despite the highly deferential reading which we accord a litigant's complaint under Rule 12(b)(6), we need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation."  *Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 52 (1st Cir. 1990).  Section 1983 is not just "an instrument of justice in the hands of the weak against the mighty," but it also has the potential for misuse; therefore, a Section 1983 claimant must "at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why."  *Dewey v. University of New Hampshire,* 694 F.2d 1, 3 (1st. Cir.1982). Within this analytical framework, the Plaintiff has failed to plead facts that suggest any actionable claim against the City.

3

**A. Count 7 Must Be Dismissed Because Plaintiff Has Failed To Properly Plead A 42 U.S.C. § 1983 Action Against The City.**

Count 7 of Plaintiff's Complaint must be dismissed because the Plaintiff has failed to properly plead a 42 U.S.C. § 1983 action against the City. It is axiomatic that a municipality is not liable for the tortious actions of its employees simply by virtue of the employment relationship. *See Board of County Commissioners v. Brown,* 520 U.S. 397, 403 (1997) ("[w]e have consistently refused to hold municipalities liable under a theory of *respondeat superior*"); *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 692 (1978) (municipalities are "not responsible for the unauthorized and unlawful acts of its officers"); "[M]unicipal liability is not vicarious." *Estate of Bennett v. Wainwright,* 548 F.3d 155, 177 (1st Cir. 2008). Municipal liability is established only when "municipal employees commit unconstitutional acts and those actions are shown to have been caused by a 'policy or custom' of the government." *Id.* Here, the Plaintiff alleges generally that the City failed to train and supervise its officers on various policies, including use of force, restraints of suspects, taking control of scenes, de-escalation and motor vehicle pursuits. (Compl. ¶133 a-i).

To establish municipal liability, "a plaintiff must show that a policy or custom of the city led to the constitutional deprivation alleged." *Santiago v. Fenton,* 891 F.2d 373, 381 (1st Cir. 1989); *accord Hathaway v. Stone,* 687 F. Supp. 708, 710 (D. Mass. 1988). This requires that "both the existence of a policy or custom and a causal link between that policy and the constitutional harm" be proven in order to impute liability to a municipality. *Santiago,* 891 F.2d at 381; *see City of Canton Ohio v. Harris,* 489 U.S. 378, 389 (1989) (municipality must consciously choose a policy that causes constitutional injury); *Polk County v. Dodson,* 454 U.S. 312, 326 (1981) (for liability to attach, municipal policy must be the "moving force behind the constitutional violation."). The municipal policy may either be (1) an official policy articulated

4

or adopted by a decision-maker; or (2) an unofficial custom as evidenced by widespread action or inaction. *See Fletcher v. Town of Clinton*, 196 F.3d 41, 55 (1st Cir.1999) (the plaintiff must show policy officially adopted and promulgated, or government custom); *accord Monell,* 436 U.S. at 690-91. "The Supreme Court, concerned that municipal liability based on fault by the City might collapse into a *de facto respondeat superior*, has set a very high bar for assessing municipal liability under *Monell*." *Young v. City of Providence ex  rel, Napolitano*, 404 F.3d 4, 26 (1st Cir. 2005).

Count 7 of Plaintiff's Complaint alleges that municipal liability should attach because the City "had the duty and responsibility for the training and supervision of its police officers regarding the appropriate use of force during a seizure and the appropriate methods and practices to avoid the use of deadly force . . ."   (Complaint, ¶ 131).  Plaintiff further alleges that the City "knew or should have known that their police officers had in the past, and would in the future, be faced with situations similar to the circumstances and facts alleged above where police officers might be in a position to consider the use of deadly force on a suspect such as Mr. Root…." (Complaint, ¶ 132).  Plaintiff alleges, in conclusory fashion, that the City's policies were deficient, but Plaintiff's Complaint is lacking any facts to support a) <u>how</u> the City's policies were deficient, and subsequently how said deficiencies led to a constitutional violation; b) how the City failed to train the named Defendants (or any of its officers), and subsequently how the failure to train led to a constitutional violation; or c) how the City failed to properly supervise any of the Defendants, and how the failure to supervise led to a constitutional violation. Plaintiff's Complaint only offers a list of  factually unsupported conclusory allegations that are insufficient to state a claim for municipal liability pursuant to 42 U.S.C. § 1983 under either a failure to train theory or a failure to supervise theory.

Additionally, Count 7 of the Plaintiff's Complaint stands in direct contradiction to the facts Plaintiff alleges in her Complaint.  On the one hand the Complaint makes reference to Boston Police Department rules and regulations, which she alleges the individual Defendants did not follow on February 7, 2020.  (Compl. ¶36, ¶38, ¶77).  On the other hand, the Plaintiff alleges that the City of Boston didn't have the proper rules and regulations in place.  In essence, the Plaintiff's Complaint concedes that the City of Boston had proper rules and regulations in place at the time of this incident.  Under the theory of municipal liability, Plaintiff cannot have it both ways.  Therefore, Count 7 of Plaintiff's Complaint must be dismissed against the City of Boston.

## 1.    Failure to Train

Turning first to Plaintiff's general allegation that the City failed to train its officers.  First, "[t]he liability criteria for 'failure to train' claims are exceptionally stringent." *Hayden v. Grayson,* 134 F.3d 449, 456 (1st Cir. 1998) (*citing City of Canton*, 489 U.S. 388-89).  Moreover, a failure to train claim is actionable only where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact" and where "the identified deficiency in a city's training program [is] closely related to the ultimate injury." *Young v. City of Providence,* 404 F.3d 4, 26 (1st Cir. 2005) (*citing City of Canton*, 489 U.S. 378).  A finding of deliberate indifference requires also that the City disregarded a known or obvious risk of serious harm from its failure to develop a training program.  *Young,* 404 F.3d at 28; *Bordanaro v. McLeod,* 871 F.2d 1151, 1156 (1st Cir. 1989).  There is no evidence, nor does Plaintiff articulate any facts, that the City does not train its officers in de-escalation, use of force, motor vehicle pursuits, and/or assessing crime scenes.  The Plaintiff asserts generally that "[p]roper training in one or more of the procedures listed in the above paragraph would have prevented the shooting of Mr. Root in Chestnut Hill and could, and should, have been

implemented by the City of Boston."  (Compl. ¶ 134).  But again, Plaintiff has not identified <u>what</u> training the officers received or <u>how</u>, specifically, it was deficient.  As the First Circuit has repeatedly emphasized, "[a] training program must be quite deficient in order for the deliberate indifference standard to be met:  the fact that training is imperfect or not in the prcise form a plaintiff would prefer is insufficient to make such a showing."  *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 27 (1st Cir. 2005).

Moreover, Plaintiff fails to specifically articulate how the City was deliberately indifferent.  Deliberate indifference generally requires that a plaintiff demonstrate "at least a pattern of similar violations" arising from training that is so clearly inadequate as to be "obviously likely to result in a constitutional violation."  *Id.  See also Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994).  "Where * * * a claim of municipal liability is predicated upon a failure to [train], the requisite degree of fault must be shown by proof of background events and circumstances which establish that the 'policy of inaction' is the functional equivalent of a decision by the city itself to violate the Constitution."  *Canton*, 489 U.S. at 394-95 (O'Connor, J., concurring in part and dissenting in part).  Here, Plaintiff has not identified any instance—other than this case—in which the City's training was deficient.  Plaintiff has not pointed to any similar violations.  This lone case, without any factual support as to how the City's training was deficient, is not enough to support a municipal liability claim premised on the City's failure to train.

2. **Failure to Supervise**

In similar conclusory fashion, Plaintiff's Complaint alleges that the City failed to adequately supervise its officers.  But Plaintiff's Complaint offers nothing more than vague and ambiguous allegations that the City failed to supervise its officers.  For example, Plaintiff alleges

generally that "The City of Boston's custom of inadequate training and supervision of its police officers amounts to deliberate indifference to clearly established constitutional rights of others[.]" (Complaint, ¶ 136). This is precisely the type of rote recitation of the basic elements of a municipal liability claim that, without any specificity or factual support, is insufficient to plead a claim for municipal liability under Section 1983. "Simply because the plaintiff has managed to say the magic words 'custom' and 'policy' does not mean that his complaint properly pleads municipal liability." *Allen v. York County Jail*, 2003 WL 221842, at *8 (D. Me. Jan 30, 2003). The allegations in the Complaint are exactly the type of "formulaic recitation[s] of the elements of a cause of action," which without factual support cannot survive a Rule 12(b)(6) motion to dismiss. *See Twombly*, 550 U.S. at 555.

Since Plaintiff has failed to sufficiently plead the existence of an actionable municipal policy or custom, she has failed to state a claim against the City under 42 U.S.C. § 1983. Plaintiff's Section 1983 municipal claim is set forth in an entirely conclusory form, reciting some elements but lacking any facts to support them. Such factually unsupported conclusory allegations need not be credited as true for the purpose of this motion. *See Iqbal*, 556 U.S. at 678. Accordingly, Count 7 of Plaintiff's Complaint must be dismissed.

## V.   CONCLUSION

For the reasons set forth above, the City respectfully requests that Count 7 of the Plaintiff's Complaint as alleged against the City, be dismissed with prejudice.

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, a copy of this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/ Erika P. Reis

Date: 10/30/20

Respectfully submitted,

DEFENDANT, CITY OF BOSTON

Eugene O'Flaherty,
Corporation Counsel

By its attorney,

/s/ Erika P. Reis
Erika P. Reis, BBO#669930
Senior Assistant Corporation Counsel
Nicole M. O'Connor, BBO# 675535
Senior Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635 – 4031 (Reis)
(617) 635 – 4039 (O'Connor)
Erika.Reis@boston.gov
Nicole.OConnor@boston.gov

**7.1 Certification**

Undersigned counsel certifies that on October 26, 2020 pursuant to LR, D. Mass. 7.1(a)(2), counsel for the Defendant, City of Boston, Erika P. Reis, spoke with counsel for the Plaintiff and was unable to resolve or narrow the issues.

Date:   10/30/20                           /s/ Erika P. Reis