UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER ROOT BANNON, as the Special Personal Representative of the Estate of Juston Root,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>BOSTON POLICE OFFICERS DAVID GODIN, JOSEPH McMENAMY, LEROY FERNANDES, BRENDA FIGUEROA, and COREY THOMAS;<br><br>MASSACHUSETTS STATE TROOPER PAUL CONNEELY; and<br><br>THE CITY OF BOSTON, MASSACHUSETTS;<br><br>　　　Defendants. | Civil Action No. 1:20-cv-11501-RGS<br><br>**HEARING REQUESTED** |

**PLAINTIFF'S REPLY IN SUPPORT OF**
**<u>MOTION FOR AN EVIDENTIARY HEARING AND SANCTIONS</u>**

Plaintiff Jennifer Root Bannon ("Plaintiff") submits this Reply to respond to the Opposition (the "Opposition") to her Motion for an Evidentiary Hearing and Sanctions (the "Motion") against Defendants David Godin ("Defendant Officer Godin") and the City of Boston (the "City") (collectively, the "Defendants").

To be clear, the Motion is not about the timing of Defendant's responses to discovery requests. Nor is it a "routine" issue that can be addressed by a further production of documents or the taking of depositions. The Motion was filed to address the fact that Defendant Officer Godin indisputably lied under oath in answering interrogatories served by Plaintiff in this action when he denied wearing his body worn camera ("BWC") on February 7, 2020, when he and four other Boston Police Department ("BPD") officers and one Massachusetts state trooper shot a defenseless Juston Root 31 times. Moreover, not only did Defendant Officer Godin lie in responding to Plaintiff's interrogatories, he told the same lie five days after the shooting to Norfolk County homicide investigators. Thus, he twice lied about not having worn his BWC that would have captured critical video evidence of the killing of Juston Root. A defendant law enforcement officer's blatant perjury and obstruction of justice with respect to such important evidence is not, and cannot be blithely dismissed as, a discovery dispute. But that is precisely how Defendant Officer Godin and the City have attempted to frame the issue for this Court.

The Defendants not only mischaracterize the Motion as discovery-related, they attack Plaintiff's Motion as "frivolous" and "laden with misrepresentations and sensationalisms" that only serve "to harass the City" and "smear the character of one of its officers." (Opp. at 1.) These accusations are shameful. Is the false testimony of a police officer and the corresponding obstruction of a homicide investigation so commonplace in the BPD that the City does not take the accusations seriously enough to take them on directly, let alone deny them? In the face of

undeniable evidence that Defendant Officer Godin made false statements under oath relating to something so significant as video evidence of a shooting in which he was personally involved, the City (and Defendant Officer Godin) suggest that Plaintiff should simply be left to depose Defendant Officer Godin and accept whatever explanation he might provide at that time. Are we to believe that his statements under oath at a deposition will be any more truthful than those already made by him under oath?

In the Motion, Plaintiff presented irrefutable evidence that Defendant Officer Godin lied when he unequivocally stated in his answers to interrogatories that he was not wearing his BWC at the time he shot and killed Juston Root. In fact, he explained in detail that he had never removed it from his "duty bag" that he kept in his police cruiser. It is noteworthy that this is the same Defendant Officer Godin who, moments after the fatal shooting, was recorded stating on fellow BPD officers' BWCs: "I killed that motherf*cker" and "I emptied my magazine on him." (Compl. ¶¶ 67-68.) Yet nowhere in their Opposition, let alone in an affidavit, do the Defendants deny Defendant Officer Godin lied in his answers to interrogatories and in his interview with homicide investigators. Defendant Officer Godin's reason is obvious – perjury and obstruction of justice are crimes. But how can the City justify the same silence? How can the City allow Defendant Officer Godin's false testimony to stand uncorrected before this Court? There is also no question that many members of the BPD had access to the same BWC video footage that Plaintiff relied on in her Motion to demonstrate the falsity of Defendant Officer Godin's statements. Did the fact that other members of the BPD knew of, or were willfully blind to, Defendant Officer Godin's false statements to this Court and to homicide investigators cause the City to remain silent as well?

Rather than correct Defendant Officer Godin's perjury, the Defendants respond that whether Defendant Officer Godin was lying is simply irrelevant because they have now presented

2

a document that they claim suggests that his BWC was not activated during the shootings.  (Opp. Ex. 1.)  But they give no explanation why, if that is the case, Defendant Officer Godin lied to investigators and in his interrogatory answer; why, moments after killing Juston Root, he took the time to actually remove his BWC from his chest and toss into is cruiser; or why he told Sgt. Det. Doogan following the shooting that he had not reviewed the video footage on his BWC.  The City and Defendant Officer Godin would like to sweep away the lies and the reasons for them by asking the Court to accept an unattested-to document that they say demonstrates that Defendant Officer Godin's BWC was not activated.  Even assuming that video footage from Defendant Officer Godin's BWC taken on February 7 "does not [currently] exist" (Opp. at 1), serious questions remain.  Why did Defendant Officer Godin remove the BWC from his chest moments after the fatal shooting and toss it into his cruiser?  Why did he lie to homicide investigators investigating his conduct five days later?  Why did he tell Sgt. Det. Doogan that he had not viewed any footage from his BWC if there was no footage?

   It is also important to note that the Defendants' contention that the absence of footage from Defendant Officer Godin's BWC was unimportant because  there "is ample footage from . . . other officers' BWCs in Chestnut Hill that corroborate all of the facts that led to the incidents" (Opp. at 7) is simply untrue.  Unless the City has footage that it has not produced, there is absolutely no BWC video footage of the fatal shooting in Chestnut Hill, despite the requirement that BPD officers wear and activate BWCs.  (Motion at 3-4, 19-20.)  Defendant Officer Brenda Figueroa was the only BPD officer of five whose BWC was activated during the fatal shooting, but her arm covered the BWC and prevented it from capturing any video of the shooting.  (*Id*. at 19-20.)  It is this complete lack of video footage that makes the video footage on Defendant Officer Godin's BWC  is so significant and why his lies about not having worn  his BWC are so concerning.

3

Contrary to the repeated suggestions in Defendants' Opposition, false statements under oath by witnesses, and in particular law enforcement officers, do not present "routine discovery questions." (Opp. at 6.) Our system of justice is dependent on the honesty of witnesses who make statements under the pains and penalties of perjury. This is particularly true when those witnesses are law enforcement officers whose responsibility it is to uphold the law. A police officer providing false information to a state prosecutor's homicide investigators and false testimony under oath in a civil rights case should not be considered "routine," even though courts have used the term "testilying" to refer to such police misconduct. *See, e.g.*, *Johnson v. Evans*, 223 F. Supp. 2d 357, 358 (D. Mass. 2002) (denying motion to dismiss civil rights claims alleging, *inter alia*, that BPD officers engaged in misconduct "including withholding of exculpatory evidence and perjury characterized as 'testilying'"). Our legal system depends on truthful testimony and cannot countenance parties who lie or are willfully blind to their agent's untruthfulness. *See United States v. Cornielle*, 171 F.3d 748, 753 (2d Cir. 1999) ("No legal system can long remain viable if lying under oath is treated as no more than a social solecism. Swearing to tell the truth is a solemn oath, the breach of which should have serious consequences . . . ."). This is particularly true where, as here, the Defendants are charged with upholding the law and civilians' constitutional rights.

The misconduct at issue also constitutes a fraud on the court. "A 'fraud on the court' occurs where," as here, "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989). As the First Circuit has described, "fraud or misstatements perpetrated in the court of litigation (such as perjury of a witness or the introduction of a false document into

4

evidence) . . . interferes with the process of adjudication." *Rogers Edwards, LLC v. Fiddes & Son Ltd.*, 427 F.3d 129, 134 (1st Cir. 2005); *see also Lu v. Menino*, 98 F. Supp. 3d 85, 99 n.12 (D. Mass. 2015) ("[C]ommitting perjury . . . may constitute a fraud on the court."); *cf. Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 588-90 (9th Cir. 1983) (affirming dismissal where plaintiffs filed false sworn answers to interrogatories and knowingly gave false sworn testimony).

For all the above reasons, judicial attention is absolutely necessary to assess the scope of Defendant Officer Godin's and the City's misconduct—including the City's failure to correct false statements of material fact made by its employee and agent—and determine appropriate sanctions. *See, e.g.*, *Hull v. Municipality of San Juan*, 356 F.3d 98, 100-03 (1st Cir. 2004) (affirming dismissal of plaintiff's personal injury claims where he was "squarely" asked about prior injuries and treatment, did not disclose three prior serious injuries, and claimed that, "in the heat of his deposition he had not remembered any of these incidents"). Proceeding with discovery, waiting for whatever documents the City chooses to provide, and relying on the deposition testimony of someone who has already perjured himself to address the serious questions raised in the Motion and this Reply is wholly insufficient. These questions also should not be for the jury and should not wait until a jury trial to be resolved. A police officer has lied under oath about critical evidence in a homicide investigation and a civil rights lawsuit. Once it has been demonstrated that a party provided false testimony with the complicity of a co-party, the Court should intervene to probe the falsehoods and determine appropriate sanctions. Court supervision is critical because Plaintiff cannot depend on the truthfulness or reliability of the information provided by Defendant Officer Godin or the City. Accordingly, Plaintiff respectfully requests that the Court conduct an evidentiary hearing and impose sanctions on Defendant Officer Godin and the City.

|  |  |
|---|---|
| Dated: May 21, 2021 | Respectfully submitted,<br><br>PLAINTIFF JENNIFER ROOT BANNON,<br><br>By her attorneys,<br><br>*/s/ Mark A. Berthiaume*<br>Mark A. Berthiaume (BBO # 041715)<br>Gary R. Greenberg (BBO # 209420)<br>Alison T. Holdway (BBO # 690569)<br>Greenberg Traurig, LLP<br>One International Place, Suite 2000<br>Boston, MA 02110<br>Tel.: 617-310-6000<br>Fax: 617-310-6001<br>berthiaumem@gtlaw.com<br>greenbergg@gtlaw.com<br>holdwaya@gtlaw.com |