UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER ROOT BANNON, as the Special Personal Representative of the Estate of Juston Root,<br><br>Plaintiff,<br><br>v.<br><br>BOSTON POLICE OFFICERS DAVID GODIN, JOSEPH McMENAMY, LEROY FERNANDES, BRENDA FIGUEROA, and COREY THOMAS;<br><br>MASSACHUSETTS STATE TROOPER PAUL CONNEELY; and<br><br>THE CITY OF BOSTON, MASSACHUSETTS;<br><br>Defendants. | Civil Action No. 1:20-cv-11501-RGS<br><br>**HEARING REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL
(1) THE CITY TO SUPPLEMENT ITS INTERROGATORY ANSWERS, AND
(2) THE CITY DEFENDANTS TO PRODUCE DOCUMENTS
AND
PLAINTIFF'S MOTION TO EXTEND FACT DISCOVERY**

Pursuant to Fed. R. Civ. P. 37(a), pursuant to Fed. R. Civ. P. 37(a), Plaintiff Jennifer Root Bannon ("Plaintiff") moves to compel (1) Defendant City of Boston ("City") to supplement its answers to Interrogatory Nos. 11–13; and (2) Defendants David Godin, Joseph McMenamy, Leroy Fernandes, Brenda Figueroa, Corey Thomas, and the City[2] to produce responsive documents that Plaintiff has repeatedly requested. Plaintiff also moves for an extension of the fact discovery deadline set in the scheduling order entered at Dkt. No. 60 for the limited purpose of

---

[2] Each police officer defendant is referred to as "Defendant Officer [Last Name]"; they are collectively referred to as the "BPD Officer Defendants." The BPD Officer Defendants and the City are collectively referred to as the "City Defendants."

accommodating the City Defendants' discovery responses sought in this motion plus the outstanding Rule 30(b)(6) deposition(s) addressed in the City's Motion for Protective Order (Dkt. No. 63) and Plaintiff's forthcoming opposition.

## FACTUAL BACKGROUND

This is a civil rights case concerning the killing of Juston Root by the BPD Officer Defendants and Defendant State Trooper Paul Conneely (collectively, the "Individual Defendants"). On February 7, 2020, the Individual Defendants shot Mr. Root more than 31 times even though he was already severely injured, bleeding, non-verbal, and was not fleeing, resisting, or posing any threat to the Individual Defendants or anyone else.

Plaintiff served interrogatories and document requests ("RFP") on the City Defendants on January 27, 2021.  The City's original interrogatory answers—served on March 26, 2021 after Plaintiff agreed to a 30-day extension—did not substantively answer any interrogatory.  Instead, the City responded to every interrogatory by stating that it would "supplement this answer."  *See* **Ex. 1**, City's Original Answers to Interrogatories, at Answers to Interrogatory Nos. 1–17.  The City's failure to answer interrogatories was the subject of Plaintiff's prior motion to compel filed on September 9, 2021.  *See* Dkt. No. 56.  The same day Plaintiff filed that motion to compel, the Court ordered the City to substantively answer Plaintiff's interrogatories by September 20, 2021.  *See* Dkt. No. 57.

The City served supplemental interrogatory answers on September 20.  *See* **Ex. 2**, City's First Supplemental Answers to Interrogatories.  As explained in more detail below (*see* Argument Section 1), Interrogatory Nos. 11–13 seek information concerning Boston Police ("BPD") officers who responded to three series of events on February 7, 2020 (the shooting at Brigham & Women's Hospital ("BWH"), the subsequent vehicle pursuit, and the fatal shooting in Chestnut Hill), including the serial number of each responding officer's body worn camera ("BWC").  *See id*. at

2

Interrogatory Nos. 11–13. The BWC serial numbers are necessary to match BWC footage, which contains the BWC serial number in the upper right corner, with the officer assigned to that BWC. In its supplemental answer to Interrogatory No. 11, the City identified two officers—Defendant Officer Godin and BPD Officer Michael St. Peter—but did not provide Officer St. Peter's BWC serial number. *See id*. at Answer to Interrogatory No. 11. Then in its supplemental answers to Interrogatory Nos. 12–13, the City provided some information but stated that it "will supplement this response." *Id*. at Answers to Interrogatory Nos. 12 and 13. Plaintiff has requested that the City provide the BWC serial numbers, but the City has failed to do so.

Similarly, the City Defendants' document productions contain numerous deficiencies. In three deficiency letters sent on June 2, 2021, October 15, 2021, and February 18, 2022, plus in a draft motion to compel that Plaintiff shared with the City Defendants on September 2, 2022 addressing deficiencies in their responses to both interrogatories and RFPs (a paired down version of which was filed on September 9, 2021 (Dkt. No. 56)), Plaintiff specifically identified the deficiencies and asked the City Defendants to produce the missing materials, state that the missing materials do not exist, or, if the City Defendants had produced the material, identify the Bates numbers at which the material can be found. *See* **Exs. 4–7**.[3] In response to the June, September, and October deficiency letters, the City Defendants made several productions. But many deficiencies remain. Despite Plaintiff having sent a final deficiency letter on February 18

---

[3] **Ex. 4** is Plaintiff's June 2, 2021 deficiency letter. This letter was also filed as Ex. 7 to Plaintiff's motion to compel filed on September 9, 2021. *See* Dkt. No. 56-8.

**Ex. 5** is the email Plaintiff's counsel sent to the City Defendants' counsel on September 2, 2021 attaching a draft motion to compel, a version of which was filed on September 9, 2021.

**Ex. 6** is Plaintiff's October 15, 2021 deficiency letter.

**Ex. 7** is Plaintiff's February 18, 2022 deficiency letter, which was sent as an email and is the earliest email in the chain.

addressing these issues, as well as follow-up emails (*see* **Ex. 7** at pp. 1–3, 8–11), the City Defendants have not yet substantively responded and indicated that they would not be able to do so until March 18, 2022 (*see* **Ex. 7** at p. 1).

## L.R. 37.1 CONFERENCE

Between February 18 and March 11, 2022, the Plaintiff's counsel (Mark Berthiaume (Shareholder at Greenberg Traurig, LLP), Gary Greenberg (Shareholder at Greenberg Traurig, LLP), Alison Holdway (Associate at Greenberg Traurig, LLP), and Courtney Foley (Associate at Greenberg Traurig, LLP)) and the City Defendants' counsel (Nicole O'Connor (Senior Assistant Corporation Counsel at the City of Boston Law Department) and Edward Whitesell (Assistant Corporation Counsel at the City of Boston Law Department)) exchanged seven emails concerning the relief sought in this motion. Plaintiff's counsel's emails on February 18, March 3, and March 11 set forth in detail her positions with respect to the deficiencies in the City Defendants' productions. *See* **Ex. 7** at pp. 1–3, 8–11. On March 11, 2022, counsel for the City Defendants replied to Plaintiff's emails and stated that they did not intend to respond to the deficiency issues until March 18, 2022—which is one month after Plaintiff's counsel sent a deficiency letter setting forth the continued omissions in the City Defendants' productions. *See id*. at p. 1. The issues raised in Plaintiff's emails at **Ex. 7** are either identical or very similar to issues that Plaintiff raised in previous deficiency letters and communications with the City Defendants. *See* **Exs. 4–6**.

## ARGUMENT

**1.   The City Has Failed to Supplement its Answers to Interrogatory Nos. 11–13.**

The City has failed to properly respond to Plaintiff's Interrogatory Nos. 11–13 in violation of Fed. R. Civ. P. 33. Under Rule 33, a party responding to interrogatories "must serve its answers and any objections within 30 days of being served with the interrogatories." Fed. R. Civ. P. 33(b)(2). To the extent an interrogatory is not objected to, it must "be answered separately and

**fully** in writing under oath." *Id*. at 33(b)(3) (emphasis added).  A party must supplement its interrogatory answers "in a timely manner." Fed. R. Civ. P. 26(e)(1)(A).  The Court may compel a party that has failed to answer an interrogatory to answer it. *See* Fed. R. Civ. P. 37(a)(3)(B)(iii). "[A]n evasive or incomplete . . . answer . . . must be treated as a failure to . . . answer . . . " *Id*. at 37(a)(4).

Interrogatory Nos. 11–13 and the City's still-deficient supplemental answers to each are set forth in their entirety here:

> **Interrogatory No. 11**: Identify each Person involved in responding to, or considering how to respond to, calls concerning reports of a person with a firearm at BWH on the morning of February 7, 2020 and the nature of their involvement; whether they were interviewed and, if so, when and by whom; whether they wore and/or activated a BWC; if they wore or activated a BWC, information identifying the BWC, <u>such as a serial number or other identifying information to tie the BWC to the Person</u>; and whether they are currently employed by the City.
>
> **City's Supplemental Answer to Interrogatory No. 11**:  With the understanding that this interrogatory seeks to identify the officers who responded to BWH in response to the report of a person with a firearm (as opposed to in response to reports of an officer-involved shooting), the City states as follows:
>
> - **Officer David Godin.**  Officer Godin responded to BWH in response to the call for a person with a firearm and encountered Juston Root. Juston Root brandished a firearm at Officer Godin.  Officer Godin discharged his firearm after he thought Juston Root fired at him.  Juston Root fled the scene, at which point Officer Godin returned to his department vehicle and followed after him. On February 7, 2020 Officer Godin was assigned firearm #VYN765, though he was in possession of Officer Jordan Wells' firearm during the incident. Officer Godin was wearing his BWC (<u>serial# X81325770</u>) during the incident, but it was not activated at any time.  Officer Godin was interviewed on February 12, 2020 by Lt. Gerard R. Mattaliano of the Massachusetts State Police as well as Sgt. Det. John Broderick from the Boston Police Department. Officer Godin is currently employed by the City.

- **Michael St. Peter.** Officer St. Peter was working a detail at BWH when he was flagged down by a BWH security officer who indicated that someone had just flashed a gun at him. While in his cruiser, Officer St. Peter observed Juston Root walking on Vining Street with a firearm. Officer St. Peter got out of his cruiser and observed Juston Root pointing his gun. He ordered Juston Root to drop the gun, at which point Officer St. Peter heard shots being fired. At that point, he discharged his firearm at Juston Root. After observing Juston Root fall to the ground, get back up, and return to his vehicle with the gun, Officer St. Peter again ordered Juston Root to drop the gun. Juston Root did not drop the gun and instead drove away. Officer St. Peter followed him. On February 7, 2020, Officer St. Peter was assigned firearm #BWP1 11. Officer St. Peter was not wearing a BWC because he was working a detail. He was interviewed on February 12, 2020 by Lt. Gerard R. Mattaliano of the Massachusetts State Police and Sgt. Det. John Broderick of the Boston Police Department. Officer St. Peter is currently employed by the City.

**Interrogatory No. 12**: Identify each Person involved in responding to, or considering how to respond to, calls concerning the Vehicle Pursuit and the nature of their involvement; whether they were interviewed and, if so, when and by whom; whether they wore and/or activated a BWC; if they wore or activated a BWC, information identifying the BWC, <u>such as a serial number or other identifying information to tie the BWC to the Person</u>; and whether they are currently employed by the City.

**City's Supplemental Answer to Interrogatory No. 12**: With the understanding that this interrogatory seeks to identify the officers involved in the vehicle pursuit, the City states as follows:

- Officer David Godin (see Answer No. 11 above)
- Officer Michael St. Peter (see Answer No. 11 above)
- Officer Fabian Belgrave
- Det. Joseph Dominguez
- Lt. Det. James Tarantino
- Officer Alex Rosa (BWC#81413738)
- Officer Andrew Fay
- Officer Justin Evangelista (BWC#81327523)
- Officer Owen Murray (BWC#81326925)
- Officer Scott Roby
- Officer Taylor Green (BWC#81411560)

- Officer Wilfredo Coriano (BWC#S 1329466)
- Officer Michael Flaven

To the best of the City's knowledge at this time, only those officers above with a serial number next to their name activated their BWC in response to the events at the Shopping Center.  For a description of their involvement and when they activated their BWCs, please refer to their Form 26s, produced at COB 3905–4062.  All of the officers identified above submitted a Form 26 but were not formally interviewed.  <u>The City will supplement this response with the serial numbers of all the officers identified above, regardless of whether they activated their BWC</u>.  All of the above officers are currently employed by the City.

**Interrogatory No. 13**:  Identify each Person involved in responding to, or considering how to respond to, calls concerning the events at the Shopping Center on February 7, 2020 after the Vehicle Pursuit and the nature of their involvement; whether they were interviewed and, if so, when and by whom; whether they wore and/or activated a BWC; if they wore or activated a BWC, information identifying the BWC, <u>such as a serial number or other identifying information to tie the BWC to the Person</u>; and whether they are currently employed by the City.

**City's Supplemental Answer to Interrogatory No. 13**:  With the understanding that this interrogatory seeks to identify the officers who responded to the Shopping Center after the shooting, the City states as follows:

- Det. David Chaves
- Sgt. Det. Thomas Pratt
- Officer Fabian Belgrave
- Det. Ismael Henriquez
- Det. Jean-Paul Limontas
- Det. Joseph Dominguez
- Det. Miguelangelo Pires
- Det. Winston DeLeon
- Lt. Det. James Tarantino
- Officer Alex Rosa (serial # X81413738)
- Officer Andrew Fay
- Officer Darryl Tran
- Officer David Hernandez
- Officer David Macioce (serial # X81414841)
- Officer Frank G. Williams Jr.

- Officer Jaunasse Jean
- Officer Justin Evangelista (serial # X81327523)
- Officer Kyle Gomes (serial# X81330982)
- Officer Kyle Holmes
- Officer Owen Murray (serial # X81326925)
- Officer Raymond Soto
- Officer Ricardo Alexandre
- Officer Robert Lemire (serial # X81327379)
- Officer Robert Walton
- Officer Ryan McQuaid (serial# X81323365)
- Officer Ryan Urso
- Officer Scott Roby
- Officer Taylor Green (serial # X81411560)
- Officer Wilfredo Coriano (serial # X813294660)
- Sgt. Dario Fancelli
- Sgt. Det. Stephen Romano
- Sgt. Paul A. DeLeo, Jr.
- Sgt. Paul A. MacIsaac
- Officer Andrew Hunter
- Officer Daniel E. Smith
- Officer Eric MacPherson
- Officer Michael Flaven
- Officer James Scopa
- Officer John P. Quinn
- Officer Kevin K. Watson (serial # X81413942)
- Officer Michael Santry
- Officer Quion T. Riley, Jr.
- Officer Stephen Roe
- Sgt. Matthew Kervin

To the best of the City's knowledge at this time, only those officers above with a serial number next to their name activated their BWC in response to the events at the Shopping Center. For a description of their involvement and when they activated their BWCs, please refer to their Form 26s, produced at COB 3905–4062. All of the officers identified above submitted a Form 26 but were not formally interviewed. <u>The City will supplement this response with the serial numbers of all the officers identified above, regardless of whether they activated their BWC</u>. All of the above officers are currently employed by the City.

*See* **Ex. 2** at pp. 11–14 (bold in original; underlining added).

8

With respect to Interrogatory No. 11, the City has failed to provide the BWC serial number for Officer St. Peter. With respect to Interrogatory Nos. 12 and 13, the City has failed to provide the BWC serial numbers for the officers listed in the bullet points above who do not have parentheticals after their names containing their BWC serial numbers.

The City has known about the facts concerning the allegations in this case since Mr. Root was shot and killed on February 7, 2020. Moreover, the City is uniquely situated in that it—but not any other party to this case—possesses the BWC serial numbers of every BPD officer who responded to the events of February 7, 2020. Plaintiff first served the interrogatories requesting the BWC serial numbers on January 27, 2021. Nearly 14 months have elapsed, and the City still has not provided a fulsome set of BWC serial numbers. Without the serial numbers, Plaintiff cannot match BWC footage that has been produced in this case to the officers wearing those cameras. This City's delay in providing this basic information is inexplicable and unjustified. The City should be compelled to expeditiously supplement its answers to Interrogatory Nos. 11–13 to include the BWC serial numbers for all BPD officers who responded on February 7, 2020.

**2.     The City Defendants' Document Productions Are Deficient.**

Under Rule 34, a party responding to document requests "must respond in writing," and each "response must state either that inspection and related activities will be permitted as requested," or that it will produce documents or electronically stored information, "or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(A) and (B). To the extent the responding party objects to a request, it "must state whether any responsive materials are being withheld on the basis of that objection." *Id*. at 34(b)(2)(C). A party must supplement its document request responses "in a timely manner." Fed. R. Civ. P. 26(e)(1)(A). The Court may compel a party to produce documents. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv).

Because the City Defendants produced documents together using the Bates prefix COB, and the BPD Officer Defendants cite various COB documents in their RFP responses, Plaintiff addresses deficiencies in the production in the context of the City's RFP responses, which are attached as **Ex. 3**.[4] In particular, deficiencies with respect to the City Defendants' document productions in response to **RFP Nos. 4, 7–9, 11–13, and 15** are described in detail below.

A.   RFP No. 4

Plaintiff's RFP No. 4 and the City's first and second supplemental responses[5] are copied in their entirety here:

> **RFP No. 4**:  All Documents and Communications concerning disciplinary records, disciplinary history, and complaints concerning each of the BPD Officer Defendants from the earliest date that each of the BPD Officer Defendants attended the police Academy through the present.
>
> **City's First Supplemental Response to RFP No. 4**:  The City objects to this Request to the extent it seeks disciplinary records or complaints that post-date the February 7, 2020 incident described in Plaintiff's Complaint or that do not pertain to use of force because they are not relevant, are not likely to lead to the discovery of admissible evidence, and are not proportional to the needs of this case.  The City further objects to the extent this request seeks documents concerning investigations that are currently pending as they are not subject to disclosure pursuant to the investigatory privilege.  The City further objects on grounds that the phrase "communications", in this context, is vague and ambiguous.  Notwithstanding, and without waiving these objections, and withholding only those documents pertaining to pending investigations (though the City agrees to produce the investigatory materials related to the February 7, 2020 incident upon its completion).  Refer to COB 60–468 (dated 3/28/21).
>
> **City's Second Supplemental Response to RFP No. 4**:  The City objects to this Request to the extent it seeks disciplinary records or complaints that post-date the February 7, 2020 incident described in

---

[4] **Ex. 3** is a copy of the City's Third Supplemental Responses to Plaintiff's First Request for the Production of Documents.  It contains the text of Plaintiff's RFPs as well as the City's original and various supplemental responses.

[5] The City's third supplemental RFP responses (**Ex. 3**) did not further supplement the response to RFP No. 4.

10

> Plaintiff's Complaint or that do not pertain to use of force because they are not relevant, are not likely to lead to the discovery of admissible evidence, and are not proportional to the needs of this case. The City further objects to the extent this request seeks documents concerning investigations that are currently pending as they are not subject to disclosure pursuant to the investigatory privilege. The City further objects on grounds that the phrase "communications", in this context, is vague and ambiguous. Notwithstanding, and without waiving these objections, and withholding only those documents pertaining to pending investigations, see COB 60–468.

*See* **Ex. 3** at 4–5. The document cited in the City's first and second supplemental responses (COB 60–468) is an Internal Affairs file related to Defendant Officer Godin. The first and second supplemental responses explain that the City is withholding documents pertaining to pending investigations.

In addition, Defendant Officer Thomas' original and supplemental answers to Interrogatory No. 8 discloses the existence of two Internal Affairs investigations into his conduct. The June 2 deficiency letter (**Ex. 4** at 3, 9), September 2 draft motion to compel (**Ex. 5** at 9–10, 13), and October 15 deficiency letter (**Ex. 6** at 3–4) all addressed Defendant Officer Thomas' answer to Interrogatory No. 8 and specifically requested that the City produce those Internal Affairs in response to RFP No. 4 when the investigations are completed. This City has not produced those files and has given no indication of whether the investigations have been completed.

The City should be compelled to produce responsive documents concerning investigations regarding each BPD Officer Defendant that have been completed. To the extent any investigations remain pending, the City should be compelled to produce responsive documents concerning those investigations upon their completion.

B.     RFP Nos. 7–9

For brevity's sake, Plaintiff's RFP Nos. 7–9 and the City's first and second supplemental responses[6] are excerpted below and are available in their entirety at **Ex. 3**:

> **RFP Nos. 7–9** These RFPs seek "[a]ll Documents and Communications, including but not limited to, reports, transcripts, notes, memoranda, audio recordings, radio transmissions, video recordings, photographs, text messages, and e-mails concerning the BWH Shooting," "the Vehicle Pursuit," and "the Chestnut Hill Shooting," respectively.
>
> **City's Original Responses to RFP Nos. 7–9** were identical and referenced certain documents in the City's production.
>
> **City's First and Second Supplemental Responses to RFP Nos. 7–9** added citations to additional documents in its productions.

*See* **Ex. 3** at 6–9.

Plaintiff's June 2 deficiency letter (**Ex. 4** at 5–6), September 2 draft motion to compel (**Ex. 5** at 15–17), October 15 deficiency letter (**Ex. 6** at 4–7), and February 18 deficiency letter (**Ex. 7** at 8–10) specifically identified documents and data that Plaintiff believes—based on her review of the evidence produced so far—is in the City's possession but have not been produced. Despite the City's supplemental RFP responses and additional productions, either the following documents and data still have not been produced or Plaintiff cannot determine from the City's productions whether all responsive documents and data have been produced as follows:

- As reflected in reports produced in this case, some witnesses took photographs and/or recorded video footage on their phones, including Patrick Cochran (*see, e.g.*, ROOT_0002269, COB 2023–3024, COB 10427–10428) and Michael Geomelos (*see, e.g.*, COB 5522).[7] An entire phone extraction was conducted of Mr. Cochran's phone, and Mr. Geomelos emailed photos and videos to Detective Michael Byrnes.

---

[6] The City's third supplemental RFP responses (**Ex. 3**) did not further supplement the responses to RFP Nos. 7–9.

[7] Because the contents of these documents are not directly relevant to this motion, Plaintiff has not attached them as exhibits.

- Plaintiff has not located the records from Mr. Cochran's, Mr. Geomelos', or any other witness's phone within the City's productions. *See also* **RFP No. 15** below.

- The City has produced texts messages sent and received by Defendant Officers Godin and Thomas, as well as voicemails received by Defendant Officer Thomas. *See* COB 2469–2484, COB 2483–2487, COB 2581–2614. To the extent that there are any other relevant text messages, voicemails, or emails sent or received by any of the BPD Officer Defendants, the City has not produced them.

- Within the City's productions, Plaintiff has not been able to locate BWC footage from either BPD Officer Owen Murray (serial no. X81326925) or BPD Officer Taylor Green (serial no. X81411560). Plaintiff produced versions of their BWC footage that Plaintiff received from the Norfolk County District Attorney's Office (Officer Murray's is at ROOT_0006172 and Officer Green's is at ROOT_0006171[8]). The version of Officer Murray's BWC footage that Plaintiff received from the Norfolk County District Attorney's Office appears to be incomplete: ordinarily, the first 30 seconds of BWC footage is silent, but the sound on Officer Murray's footage begins almost immediately. Plaintiff has requested that if the City has produced a complete version of Officer Murray's BWC footage—including the 30 seconds of silence at the beginning—and/or Officer Green's BWC footage, to please identify the Bates number(s), or, if the City has not produced footage from either officer, to produce the full recordings. *See* **Ex. 7** at 3.

- The City's productions contain certain audit reports for some of the BWCs worn by BPD officers involved in the events of February 7, 2020. Plaintiff has not been able to locate audit reports—specifically, User Audit Reports, Device Audit Reports, Evidence Audit Reports, and Redaction Audit Reports—for all BPD officers involved, including the BPD Officer Defendants. Thus, it is not clear whether the City has produced all audit reports for every officer who was at the scene of the BWH shooting, was involved in the vehicle pursuit, and/or was at the scene of the Chestnut Hill shooting from January 1, 2020 through March 31, 2020.[9]

- BPD Rule 301 provides that the Patrol Supervisor is required to complete a Pursuit Report (BPD Form 1647, revised 3/89) after a vehicle pursuit. *See* BPD Rule 301, §§ 7.5.8 and 12 (2013), *available at* https://static1.squarespace.com/static/5086f19ce4b0ad16ff15598d/t/52af5f16e4b0dbce9d22a7dd/1387224854494/Rule+301.pdf. Plaintiff has not located a Pursuit Report concerning the February 7, 2020 pursuit in the City's productions.

---

[8] Because the contents of this footage is not directly relevant to this motion, Plaintiff has not attached them as exhibits.

[9] The BWC audit reports are also responsive to RFP No. 11, which seeks "[a]ll Documents and Communications concerning the BPD Officer Defendants' use or lack of use of BWCs on February 7, 2020." **Ex. 3** at 9.

- BPD Rule 405 provides that when an officer failed to properly activate his or her BWC or record footage, he or she must either report the failure in an incident report or, if the officer did not prepare an incident report, in a BWC Special Notification Form. *See* BPD Rule 405, §§ 2.2 and 3.1 (2021), *available at* https://static1.squarespace.com/static/5086f19ce4b0ad16ff15598d/t/61437db5be10c02e9ae76b41/1631813045674/SO21-38.pdf. Plaintiff has not located any BWC Special Notification Form within the City's productions despite multiple BPD officers first not having properly activated/used their BWCs and then not having documented the failure in an incident report.[10]

- The City produced a folder Bates labeled COB 4120, which is a set of 380 recordings of police radio transmissions from February 7, 2020. The file names of the recordings do not provide any identifying information about the recordings; the naming convention looks like this: "Audio_4400###.wav." The City's counsel informed Plaintiff's counsel that software called NiceInformMediaPlayer would sort the recordings into a usable format. Plaintiff's counsel downloaded NiceInformMediaPlayer, and the software does sort the recordings into chronological order, which is helpful in assessing when a recording was made. Unfortunately, when viewed in NiceInformMediaPlayer, the names of the recordings do not correspond with the names of the recordings when viewed in the folder that the City produced, which is Bates labeled COB 4120. There does not seem to be a way to extract or export a singular recording from NiceInformMediaPlayer. As a result, Plaintiff's counsel has been unable to isolate individual, relevant recordings and have requested that the City provide a list cross referencing the "Audio_4400###.wav" file names with the file names as they appear in NiceInformMediaPlayer. *See* **Ex. 7** at 9.

- It is not clear whether the folder Bates labeled COB 4120 and described in the preceding bullet point includes all relevant Boston Area Police Emergency Radio Network ("BAPERN") transmissions from February 7, 2020. BAPERN is a regional police radio system in Eastern Massachusetts.

- It is not clear whether the City has produced unredacted copies of all

    o reports (including any and all reports by Sergeant Detective Thomas Pratt);

    o videos (including all video footage obtained from cameras owned, operated, or maintained by Trinity Management Company ("Trinity")[11] and collected

---

[10] BWC Special Notification Forms are also responsive to RFP No. 11, which seeks "[a]ll Documents and Communications concerning the BPD Officer Defendants' use or lack of use of BWCs on February 7, 2020." **Ex. 3** at 9.

[11] Plaintiff subpoenaed records from Trinity, including video footage from February 7, 2020. In response, Trinity provided an affidavit from an employee swearing that he is "no longer in possession, custody or control of such [responsive] documents and communications, including but not limited to any notes, audio, [sic] recordings, video recordings, photographs, text messages, and emails, because [he] provided them to the Boston Police Department and did not maintain any copies." **Ex. 11** at ¶ 4.

    by the BPD (*see* COB 5383–5386[12]); all traffic camera footage; and all video footage from BWH (*see* COB 5574–5577[13]) or the Massachusetts Mental Health Center; and video footage and/or photographs taken during a line search, video canvass, or any other search conducted at the scene in Chestnut Hill (*see* COB 3936,[14] which refers to a video canvas of the Chestnut Hill scene));

  o photographs (including photographs of the bb gun and all other physical evidence seized in connection with the events of February 7, 2020; and photographs taken by BPD Officer Scott Roby on his BPD-issued cell phone as reflected in the report at COB 3994–3995[15]); or

  o other documents (including, but not limited to, any tip or lead received by the City concerning the events of February 7, 2020; emails that BPD Officer Roby may have sent to BPD Lieutenant Daniel Duff (*see* COB 5396[16]); or any press release or other written statements provided to the media concerning the events of February 7, 2020).

All of these documents are likely to be—if not definitively are—in the possession, custody, and control of the City. They are responsive to RFP Nos. 7–9 and are directly relevant to the claims in this case. As a result, the City should be compelled to produce these documents, identify the

---

[12] The report Bates stamped COB 5383–5386, which references Trinity's video footage, is designated as being "Subject to Protective Order." Plaintiff interprets this designation as indicating that the report is confidential under the Stipulated Protective Order entered in this case at Dkt. No. 46. Because the contents of this report are not directly relevant to this motion, Plaintiff has not attached the report as an exhibit.

[13] The report Bates stamped COB 5574–5577 is designated as being "Subject to Protective Order." Plaintiff interprets this designation as indicating that the report is confidential under the Stipulated Protective Order entered in this case at Dkt. No. 46. Because the contents of this report are not directly relevant to this motion, Plaintiff has not attached the report as an exhibit.

[14] The report Bates stamped COB 3936 is designated as being "Subject to Protective Order." Plaintiff interprets this designation as indicating that the report is confidential under the Stipulated Protective Order entered in this case at Dkt. No. 46. Because the contents of this report are not directly relevant to this motion, Plaintiff has not attached the report as an exhibit.

[15] The report Bates stamped COB 3994–3995 is designated as being "Subject to Protective Order." Plaintiff interprets this designation as indicating that the report is confidential under the Stipulated Protective Order entered in this case at Dkt. No. 46. Because the contents of this report are not directly relevant to this motion, Plaintiff has not attached the report as an exhibit.

[16] The report Bates stamped COB 5396 reflects that Lieutenant Duff instructed Officer Roby to email photographs that Officer Roby had taken on his BPD-issued cell phone to Lieutenant Duff. This document is designated as being "Subject to Protective Order." Plaintiff interprets this designation as indicating that the report is confidential under the Stipulated Protective Order entered in this case at Dkt. No. 46. Because the contents of this report are not directly relevant to this motion, Plaintiff has not attached the report as an exhibit.

Bates number of any documents the City contends it previously produced, or identify which, if any, do not exist or are not in the City's possession, custody, or control.

  **C.**  **RFP No. 15**

Plaintiff's RFP No. 15 and the City's responses are copied in their entirety here:

> **RFP No. 15**: All evidence seized concerning the BWH Shooting, the Vehicle Pursuit, and the Chestnut Hill Shooting, including but not limited to evidence seized concerning Mr. Root's vehicle and other possessions.
>
> **City's Original Response to RFP No. 15**: The City objects to this request to the extent it seeks the Boston Police Department's internal investigatory documents concerning the BWH Shooting, the Vehicle Pursuit, or the Chestnut Hill Shooting because this investigation is still pending and therefore not subject to disclosure pursuant to the investigatory privilege. The City further objects on grounds that the phrase "communications", in this context, is vague and ambiguous. Notwithstanding, and without waiving these objections, the City agrees to produce the Boston Police Department's investigatory documents upon the completion of the investigation and will supplement this response accordingly. By way of further response, see COB 2995-3092; 3112-3490.
>
> **City's First Supplemental Response to RFP No. 15**: The City objects to this request to the extent it seeks the Boston Police Department's internal investigatory documents concerning the BWH Shooting, the Vehicle Pursuit, or the Chestnut Hill Shooting because this investigation is still pending and therefore not subject to disclosure pursuant to the investigatory privilege. The City further objects on grounds that the phrase "communications", in this context, is vague and ambiguous. Notwithstanding, and without waiving these objections, refer to COB 6587-6606[2] and COB 2995-3092; 3112-3490.
>
> **City's Second Supplemental Response to RFP No. 15**: The City objects to this request on grounds that the phrase "communications", in this context, is vague and ambiguous. To the extent the Plaintiff is asking the City to search its emails, the City invites Plaintiff to provide search terms. Notwithstanding, and without waiving these objections, and with the understanding that the City will wait to search its emails until it receives search terms from Plaintiff, see COB 6587-6606 and COB 2995-3092; 3112-3490; 3491-11589.

*See* **Ex. 3** at 12.

Within the series of documents cited in the City's original answer to RFP No. 15 are COB 3021–3022 (**Ex. 12**) and COB 3023–3024 (**Ex. 13**), which are memoranda from Trooper Edward Keefe regarding extracting and analyzing data from Mr. Root's mobile device and the mobile device of a witness named Patrick Cochran. The memorandum concerning Mr. Root's mobile device states that data was extracted from it, including "contacts, call logs, sms (text messages), mms (multimedia) messages, pictures, videos, application data, internet history and other data files, including "[s]ome deleted files"; the recovered data "was compiled into a Cellbrite extraction report," which was turned over to Sergeant John Fanning. See **Ex. 12** at COB 3022. Similar data was extracted from Mr. Cochran's mobile device, which was provided to Detective Sergeant Brown. See **Ex. 13** at 3024.

The Cellbrite extraction reports for Mr. Root's and Mr. Cochran's mobile devices—and Cellbrite reports for any other mobile device from which data concerning the events of February 7, 2020 was extracted—are responsive to RFP No. 15 but have not been produced. Plaintiff requests that the City be compelled to produce the Cellbrite extraction reports and all responsive data or materials extracted from Mr. Root's and Mr. Cochran's mobile devices.

### REQUEST FOR ATTORNEYS' FEES AND EXPENSES

Pursuant to Fed. R. Civ. P. 37(a)(5)(A), if the Court grants this motion, Plaintiff asks that it award her reasonable expenses, including attorneys' fees, incurred in making this motion.

### CONCLUSION

The City has failed to properly supplement its answers to Interrogatory Nos. 11–13, and the City Defendants' productions continue to be deficient despite multiple requests from Plaintiff to produce responsive materials. These defendants should be compelled to respond fully and properly so that Plaintiff may have full access to the discovery to which she is entitled. Accordingly, Plaintiff respectfully requests that the Court enter an order (1) compelling the City

to supplement its answers to Interrogatory Nos. 11–13; (2) compelling the City Defendants to produce responsive documents that Plaintiff has repeatedly requested; and (3) extending the fact discovery deadline set in the scheduling order entered at Dkt. No. 60 to accommodate the discovery requested in this motion plus the Rule 30(b)(6) depositions(s) addressed in the City's Motion for Protective Order (Dkt. No. 63) and Plaintiff's forthcoming opposition.

Dated: March 16, 2022

Respectfully submitted,

PLAINTIFF JENNIFER ROOT BANNON,

By her attorneys,

*/s/ Mark A. Berthiaume*
Mark A. Berthiaume (BBO # 041715)
Gary R. Greenberg (BBO # 209420)
Alison T. Holdway (BBO # 690569)
Courtney R. Foley (BBO # 707181)
Greenberg Traurig, LLP
One International Place, Suite 2000
Boston, MA 02110
Tel.: 617-310-6000
Fax: 617-310-6001
berthiaumem@gtlaw.com
greenbergg@gtlaw.com
holdwaya@gtlaw.com
foleyc@gtlaw.com